

**FILED & ENTERED**

**JUL 23 2020**

**CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Rosalina Lizardo Harris,<br>                  Debtor. | Case No.:   2:20-bk-12839-ER<br>Chapter:     11<br><br>**MEMORANDUM OF DECISION GRANTING MOTION FOR ATTORNEYS' FEES UNDER 42 U.S.C. § 1988**<br><br>**[RELATES TO DOC. NO. 38]**<br><br>Date:         June 30, 2020<br>Time:        10:00 a.m.<br>Location:   Courtroom 1568<br>                   Roybal Federal Building<br>                   255 East Temple Street<br>                   Los Angeles, CA 90012 |

   At the above-captioned date and time, the Court conducted a hearing on *Creditor Crystal Holmes' Notice of Motion and Motion for Attorneys' Fees Under 42 U.S.C. § 1988* [Doc. No. 38] (the "Motion"). The Motion was unopposed. Prior to the hearing, the Court issued a tentative ruling indicating its intent to deny the Motion without prejudice based upon a lack of jurisdiction. Movant Crystal Holmes ("Holmes") appeared at the hearing and presented argument and authority in support of the contention that the Court did have jurisdiction. The Court took the Motion under submission to consider Holmes' arguments. For the reasons set forth below, the Court finds that it has jurisdiction and **GRANTS** the Motion.

## I. Background

   On May 27, 2020, the Court dismissed a voluntary Chapter 11 petition filed by Rosalina Lizardo Harris ("Harris"). The Court found that Harris filed the petition in bad faith, solely to avoid posting a supersedeas bond during Harris' appeal of a judgment that Holmes holds against Harris. Doc. Nos. 33 (order dismissing petition) and 30 (final ruling dismissing petition).

**A. Holmes' Judgment Against Harris**

On May 3, 2018, Holmes filed a complaint against Harris and other parties in the District Court, asserting claims under 42 U.S.C. § 1983 (the "Complaint").[1] On July 11, 2019, after conducting a jury trial, the District Court entered judgment in favor of Holmes in the amount of $2,265,952.00 (the "Judgment"). Doc. No. 14, Ex. 4. The jury found that Harris, who is a detective employed by the Los Angeles Sheriff's Department (the "LASD"), violated Holmes' Fourth Amendment right to be free from unreasonable arrest without probable cause, and awarded damages of $765,952. *Id.* The jury further found that Harris acted with malice, oppression, or reckless disregard of Holmes' constitutional rights, and awarded punitive damages of $1.5 million. *Id.*

On September 19, 2019, the District Court denied Harris' renewed motion for judgment as a matter of law. The District Court stated:

> The Court concludes that there was ample evidence to support the jury's verdict. There was sufficient evidence supporting the jury's conclusion that [Harris] acted under color of law in procuring [Holmes'] arrest, and that [Harris] procured [Holmes'] wrongful arrest without probable cause.

Doc. No. 14, Ex. 5.

On October 4, 2019, the District Court denied Harris' motion for a new trial or, in the alternative, an altered or amended judgment. Doc. No. 14, Ex. 6. The District Court rejected Harris' contention that the award of actual damages was not supported by sufficient evidence. *Id.* The District Court also found that the award of $1.5 million in punitive damages was justified:

> Here, the jury found that [Harris] acted "with malice, oppression, or reckless disregard of [Holmes'] constitutional rights" in procuring her wrongful arrest, rather than negligently. The jury concluded that [Harris], a law enforcement officer, carried out the wrongful arrest of an innocent person under the authority of her position, in deliberate disregard of [Holmes'] right to be free of unlawful arrest. The Court concludes that this is reprehensible conduct.

*Id.* (internal citations omitted).

On October 4, 2019, the District Court awarded Holmes attorneys' fees in the amount of $760,397.50, and costs and expenses in the amount of $2,709.29. *Id.*

On October 10, 2019, Harris appealed the Judgment to the Ninth Circuit. The Ninth Circuit took no action on the appeal prior to the filing of Harris' voluntary Chapter 11 petition.

**B. The Dismissal of Harris' Voluntary Chapter 11 Petition**

On March 13, 2020 (the "Petition Date"), Harris filed a voluntary Chapter 11 petition (the "Petition"). On May 27, 2020, the Court granted Holmes' motion to dismiss the Petition. Doc. No. 33 (the "Dismissal Order"). The Court found that Harris filed the Petition in bad faith, to avoid being required to post a supersedeas bond during the appeal of the Judgment. In the

---

[1] *See generally Holmes v. Harris*, Case No. 2:18-cv-03739-PSG, pending in the United States District Court for the Central District of California.

Dismissal Order, the Court retained jurisdiction for the purpose of adjudicating any motion for sanctions or attorneys' fees filed by Holmes.

### C. Summary of the Motion

In the Motion, Holmes seeks attorneys' fees in the amount of $47,027 and costs in the amount of $3,435.44 for work performed obtaining the dismissal of the petition. Fees and costs are sought pursuant to 42 U.S.C. § 1988, which authorizes an award of reasonable attorneys' fees to the prevailing party in an action brought under 42 U.S.C. § 1983. Holmes asserts that she is entitled to fees and costs because the work performed obtaining dismissal of the petition was necessary to protect and enforce the Judgment. Holmes cites *Pinshaw v. Monk*, 565 F.Supp. 44 (D. Mass. 1983), in which the court held that under 42 U.S.C. § 1988, the plaintiff was entitled to attorneys' fees for the costs of bringing a non-dischargeability action to protect a § 1983 judgment.

## II. Findings of Fact and Conclusions of Law
### A. The Court Has Jurisdiction to Consider the Motion

In *United States v. Merrit Yochum and Rose Marie Yochum (In re Yochum)*, 89 F.3d 661 (9th Cir. 1996), the court found that bankruptcy courts have jurisdiction to award attorneys' fees under 26 U.S.C. § 7340, which authorizes an award of reasonable attorneys' fees to the prevailing party in a tax dispute. In *Yochum*, the IRS filed a proof of claim against the debtors for unpaid taxes. *Id.* at 663. After extensive litigation between the IRS and the debtors, the bankruptcy court substantially reduced the allowed amount of the IRS' claim. *Id.* at 664–65. The bankruptcy court approved the debtors' plan of reorganization, which provided for payment of the IRS' claim. *Id.* at 665. The bankruptcy court then awarded the debtors attorneys' fees incurred in the dispute with the IRS. *Id.*

In finding that the bankruptcy court had jurisdiction to award the debtors attorneys' fees under 26 U.S.C. § 7340, the *Yochum* court explained:

> [A]warding attorneys' fees can be construed as a core proceeding over which the bankruptcy court has jurisdiction. The bankruptcy courts' jurisdiction is limited to "core" proceedings, a term for which no exact definition exists. 28 U.S.C. § 157(b)(2) (providing a non-exhaustive list of matters deemed to be core proceedings); *In re Cinematronics, Inc.,* 916 F.2d 1444, 1449–50 (9th Cir.1990) (observing that section 157(b)(2) provides a "laundry list of core proceedings along with the admonition that core proceedings include 'but are not limited to,' the items listed")…..
>
> In determining whether a matter is a non-core proceeding, we look to a variety of factors "such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case." *Cinematronics,* 916 F.2d at 1450 n. 5.
>
> Here, the right to attorneys' fees does not exist independent of the bankruptcy proceeding, the resolution of this issue does not depend on state law, and the right to fees did not exist prior to the bankruptcy. Rather, it emanates from the bankruptcy itself. As another court has observed, these types of fee petitions essentially "arise in the context of a bankruptcy proceeding." *Chambers,* 140 B.R. at 237 n. 5. Accordingly, they should be classified as core proceedings.

*In re Yochum*, 89 F.3d 661, 669–70 (9th Cir. 1996).

Here, Holmes incurred attorneys' fees obtaining dismissal of the petition, which she was required to do in order to protect and enforce the Judgment. Holmes could not enforce the Judgment while the petition remained pending, and had Holmes not contested the petition, Harris conceivably could have confirmed a Chapter 11 Plan that would have discharged some or all of the Judgment. Similar to the situation in *Yochum*, Holmes' right to attorneys' fees did not exist independently of the bankruptcy, because Holmes' entitlement to the fees arose only in connection with her efforts to obtain dismissal of the petition. Therefore, the issue of whether Holmes is entitled to attorneys' fees under 42 U.S.C. § 1988 is a core proceeding.

**B. Holmes is Awarded $49,202.44 Pursuant to 42 U.S.C. § 1988, Consisting of Attorneys' Fees in the Amount of $45,767.00 and Costs in the Amount of $3,435.44**

Title 42 U.S.C. § 1988 provides that in an action under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs …." Fees incurred while enforcing or protecting a § 1983 judgment may be awarded under 42 U.S.C. § 1988. For example, in *Pinshaw v. Monk*, 565 F. Supp. 44, 46 (D. Mass. 1983), the court awarded fees under 42 U.S.C. § 1988 for work required to prevent a § 1983 judgment from being discharged in a debtor's bankruptcy.

Under 42 U.S.C. § 1988, Holmes is entitled to attorneys' fees for the costs of obtaining the dismissal of Harris' Chapter 11 petition. As discussed above, Holmes was required to seek dismissal to enforce and protect the Judgment.

The Court "must calculate awards for attorneys' fees using the 'lodestar' method, and the amount of that fee must be determined on the facts of each case. The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (internal citations and quotations omitted).

"The 'prevailing market rates in the relevant community' set the reasonable hourly rate for purposes of computing the lodestar amount…. 'Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.' Within this geographic community, the district court should 'tak[e] into consideration the experience, skill, and reputation of the attorney [or paralegal].'" *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205–06 (9th Cir. 2013) (internal citations omitted).

The breakdown of the fees sought by Holmes is as follows:

| Legal Professional | Hourly Rate | Hours Expended | Fees Requested |
| --- | --- | --- | --- |
| Anthony R. Bisconti | $630 | 60.2 | $37,926.00 |
| Nathaniel Reinhardt | $430 | 9.9 | $4,257.00 |
| Ali Matin | $595 | 1.4 | $833.00 |
| Elizabeth Garcia | $210 | 4.1 | $861.00 |
| **TOTAL:** | | **75.6** | **$43,877.00** |

In addition to the foregoing, Holmes seeks fees in the amount of $3,150.00, based upon an estimated five hours of work for Bisconti to respond to any opposition to the Motion and to appear at the hearing on the Motion.

Bisconti, who served as lead counsel, has eleven years of bankruptcy experience. Reinhardt has four years of bankruptcy experience and Matin has eleven years of bankruptcy experience. Bisconti, Reinhardt, and Matin have clerked for bankruptcy judges in this district. Garcia is a paralegal. Taking into account the experience, skill, and reputation of Holmes' counsel, the Court finds that the hourly rates charged are reasonable.

Based upon its review of counsel's billing records and its review of the papers filed by counsel in connection with the litigation to obtain the dismissal of Harris' Chapter 11 petition, the Court finds that the hours billed are reasonable, with the exception of the estimated five hours for work performed subsequent to the filing of the Motion. Work performed subsequent to the filing of the Motion consisted of reviewing the Court's tentative ruling, researching the jurisdictional issue raised by the Court, and appearing at the hearing. An attorney of Bisconti's experience could have reasonably accomplished these tasks in three hours. Therefore, Holmes is entitled to an award of attorneys' fees in the amount of $45,767.00 (consisting of the $43,877.00 set forth in the table above, plus $1,890.00 for three hours of work performed by Bisconti subsequent to the filing of the Motion). Costs in the amount of $3,435.44, for filing fees, postage, transcript fees, and online legal research fees, are also reasonable and are awarded.

## III. Conclusion

Based upon the foregoing, Holmes is awarded $49,202.44 pursuant to 42 U.S.C. § 1988, consisting of attorneys' fees in the amount of $45,767.00 and costs in the amount of $3,435.44. Fees and costs are awarded as compensation for work necessary to enforce and protect the Judgment entered in Holmes' favor in *Holmes v. Harris*, Case No. 2:18-cv-03739-PSG, pending in the United States District Court for the Central District of California. The Court will enter judgment consistent with this Memorandum of Decision.

###

Date: July 23, 2020

Ernest M. Robles
United States Bankruptcy Judge