

**FILED & ENTERED**

**JUL 23 2020**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Rosalina Lizardo Harris,<br>            Debtor. | Case No.:  2:20-bk-12839-ER<br>Chapter:   11<br>**MEMORANDUM OF DECISION DENYING MOTION FOR SANCTIONS PURSUANT TO BANKRUPTCY RULE 9011 AND 11 U.S.C. § 105(A)**<br>**[RELATES TO DOC. NO. 40]**<br>Date:       June 30, 2020<br>Time:       10:00 a.m.<br>Location:  Courtroom 1568<br>               Roybal Federal Building<br>               255 East Temple Street<br>               Los Angeles, CA 90012 |

    At the above-captioned date and time, the Court conducted a hearing on the *Motion for Sanctions Pursuant to Fed. R. Bankr. P. 9011 and 11 U.S.C. § 105(a)* [Doc. No. 40] (the "Sanctions Motion") filed by Crystal Holmes ("Holmes"). For the reasons set forth below, the Sanctions Motion is **DENIED**.[1]

---

[1] The Court considered the following papers in adjudicating the Sanctions Motion:
1) Notice of Motion and Motion for Sanctions Pursuant to Fed. R. Bankr. P. 9011 and 11 U.S.C. § 105(a) [Doc. No. 40];
2) Opposition to Motion for Sanctions Pursuant to Fed. R. Bankr. P. 9011 and 11 U.S.C. § 105(a) [Doc. No. 50]; and
3) Creditor Crystal Holmes' Reply in Support of Motion for Sanctions Pursuant to Fed. R. Bankr. P. 9011 and 11 U.S.C. § 105(a) [Doc. No. 53].

## I. Facts and Summary of Pleadings

On May 27, 2020, the Court dismissed a voluntary Chapter 11 petition filed by Rosalina Lizardo Harris ("Harris"). The Court found that Harris filed the petition in bad faith, solely to avoid posting a supersedeas bond during Harris' appeal of a judgment that Holmes holds against Harris. Doc. Nos. 33 (order dismissing petition) and 30 (final ruling dismissing petition).

Holmes now moves for the imposition of sanctions against Harris and her counsel pursuant to Bankruptcy Rule 9011 and the Court's inherent authority under 11 U.S.C. § 105. Harris opposes the Sanctions Motion.

### A. Holmes' Judgment Against Harris

On May 3, 2018, Holmes filed a complaint against Harris and other parties in the District Court, asserting claims under 42 U.S.C. § 1983 (the "Complaint").[2] On July 11, 2019, after conducting a jury trial, the District Court entered judgment in favor of Holmes in the amount of $2,265,952.00 (the "Judgment"). Doc. No. 14, Ex. 4. The jury found that Harris, who is a detective employed by the Los Angeles Sheriff's Department (the "LASD"), violated Holmes' Fourth Amendment right to be free from unreasonable arrest without probable cause, and awarded damages of $765,952. *Id.* The jury further found that Harris acted with malice, oppression, or reckless disregard of Holmes' constitutional rights, and awarded punitive damages of $1.5 million. *Id.*

On September 19, 2019, the District Court denied Harris' renewed motion for judgment as a matter of law. The District Court stated:

> The Court concludes that there was ample evidence to support the jury's verdict. There was sufficient evidence supporting the jury's conclusion that [Harris] acted under color of law in procuring [Holmes'] arrest, and that [Harris] procured [Holmes'] wrongful arrest without probable cause.

Doc. No. 14, Ex. 5.

On October 4, 2019, the District Court denied Harris' motion for a new trial or, in the alternative, an altered or amended judgment. Doc. No. 14, Ex. 6. The District Court rejected Harris' contention that the award of actual damages was not supported by sufficient evidence. *Id.* The District Court also found that the award of $1.5 million in punitive damages was justified:

> Here, the jury found that [Harris] acted "with malice, oppression, or reckless disregard of [Holmes'] constitutional rights" in procuring her wrongful arrest, rather than negligently. The jury concluded that [Harris], a law enforcement officer, carried out the wrongful arrest of an innocent person under the authority of her position, in deliberate disregard of [Holmes'] right to be free of unlawful arrest. The Court concludes that this is reprehensible conduct.

*Id.* (internal citations omitted).

On October 4, 2019, the District Court awarded Holmes attorneys' fees in the amount of $760,397.50, and costs and expenses in the amount of $2,709.29. *Id.*

---

[2] *See generally Holmes v. Harris*, Case No. 2:18-cv-03739-PSG, pending in the United States District Court for the Central District of California.

On October 10, 2019, Harris appealed the Judgment to the Ninth Circuit. The Ninth Circuit took no action on the appeal prior to the filing of Harris' voluntary Chapter 11 petition.

**B. The Dismissal of Harris' Voluntary Chapter 11 Petition**

On March 13, 2020 (the "Petition Date"), Harris filed a voluntary Chapter 11 petition (the "Petition"). On May 27, 2020, the Court granted Holmes' motion to dismiss the Petition. Doc. No. 33 (the "Dismissal Order").[3] The Court found that Harris filed the Petition in bad faith, to avoid being required to post a supersedeas bond during the appeal of the Judgment. The Court found that there was no realistic possibility that Harris would be able to confirm a plan:

> In the Ninth Circuit, individual Chapter 11 debtors are subject to the absolute priority rule. *Zachary v. California Bank & Tr.*, 811 F.3d 1191 (9th Cir. 2016). This means that to confirm a plan over Holmes' opposition, the plan must either (1) provide for payment of the Judgment in full or (2) not permit Harris to retain the Property. Harris' objective in seeking bankruptcy protection was to save the Property, which limits Harris to proposing a plan that would provide for payment of the Judgment in full.
>
> Even a plan funded by all of Harris' assets other than the Property would fall far short of paying the Judgment in full. The Judgment exceeds $3 million; the unencumbered assets of the Pension Plan and 401k Plan total approximately $630,000. (This calculation assumes that Harris would be willing to devote even exempt assets to funding a plan.) Payment of the entirety of Harris' retirement assets toward the Judgment would leave $2.37 million of the Judgment unsatisfied. Assuming a very favorable interest rate of 3%, a plan providing for the payment of the remaining $2.37 million over 30 years would require monthly payments of $9,992.02. According to Schedule J, Harris' monthly net income is only $3,918.11—less than half the amount required to fund a plan.
>
> Harris asserts that a plan could also be funded by potential malpractice and indemnity claims. But Harris has provided no meaningful evidence that any claims she does possess would generate funds sufficient to make a plan confirmable. Harris' description of the claims is cursory and leaves the Court with serious doubts as to whether the claims would even be viable.

Final Ruling Granting Dismissal Motion [Doc. No. 30] (the "Dismissal Ruling") at 9–10.

At the hearing on Holmes' motion to dismiss the Petition, Harris' counsel argued that she could confirm a plan over Holmes' opposition by taking advantage of the new-value corollary to the absolute priority rule. Harris' counsel stated that Harris' new value contribution could be funded by exempt assets, including the exempt equity in the Property and her exempt retirement assets. Harris' counsel estimated that total exempt assets that could be committed to a new value contribution could exceed $500,000. The Court was not persuaded by counsel's arguments:

> Under the new value corollary to the absolute priority rule, a debtor may cram down a plan while simultaneously retaining non-exempt pre-petition assets, provided that the debtor contributes "new value" toward the plan. *See generally Bank of America v. 203 North LaSalle Street Partnership*, 526 U.S. 434 (1999) (describing the new value

---

[3] In the Dismissal Order, the Court retained jurisdiction for the purpose of adjudicating any motion for sanctions or attorneys' fees filed by Holmes.

> corollary). To qualify as "new value," the contribution must be "(1) new, (2) substantial, (3) in money or money's worth, (4) necessary for successful reorganization, and (5) reasonably equivalent to the value or interest received." *Liberty Nat'l Enterprises v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d 650, 654 (9th Cir. 1997).
>
> If Harris did in fact propose a plan committing $500,000 in exempt assets in order to retain a Property with approximately $400,000 in equity, the Court cannot conclusively rule out the possibility that such a plan could be confirmed over Holmes' opposition. However, there is nothing in the record indicating that Harris would be willing to commit to the hypothetical plan postulated by her counsel. In her declaration in opposition to the Motion to Dismiss, Harris' testimony regarding a hypothetical plan was limited to the following: "I have had the basics of bankruptcy reorganization explained to me and believe there is a way to save my home for my family and reorganize in bankruptcy and pay my creditors including Holmes what they would get if I were to liquidate to pay them, and still save my house. It will not be easy I know." Harris Decl. [Doc. No. 25] at ¶¶ 25–26. This cursory testimony fails to show that Harris is willing to make the substantial sacrifice of committing approximately $500,000 in non-exempt assets that would be required were Harris to have a realistic possibility of confirming a plan.
>
> Further, the remaining evidence before the Court shows that Harris' intent in seeking bankruptcy protection was not to propose a plan funded by substantially all her non-exempt assets, but rather to circumvent the requirement to post a supersedeas bond. This case has been pending for more than two months, but Harris has yet to comply with certain basic obligations that are applicable to all Chapter 11 debtors. She has not filed Monthly Operating Reports for the months of March or April. Pursuant to Local Bankruptcy Rule ("LBR") 2015-2(a) and the *Guidelines and Requirements for Chapter 11 Debtors in Possession* published by the United States Trustee, the March Monthly Operating Report was due on April 15 and the April Monthly Operating Report was due on May 15. Harris has not filed an application to employ Jeffrey B. Smith as her general bankruptcy counsel. According to the *Disclosure of Compensation of Attorney for Debtor* [Doc. No. 1], Smith has been paid a retainer of $26,717.00 and has agreed "to render legal services for all aspects of the bankruptcy case, including … [p]reparation and filing of any … plan which may be required …." Under LBR 2014-1(b)(1)(E), "an application for the employment of counsel for a debtor in possession should be filed *as promptly as possible* after the commencement of the case" (emphasis added).

Dismissal Ruling at 10–11.

**C. Papers Filed in Connection with the Sanctions Motion**

*1. Summary of the Sanctions Motion*

Holmes seeks sanctions against Harris and her counsel in the amount of $50,462.44. Holmes makes the following arguments and representations in support of the Sanctions Motion:

The filing of a petition is sanctionable under Bankruptcy Rule 9011 if (1) the petition was frivolous pursuant to applicable law or (2) the petition was filed for an improper purpose. *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 829-831 (9th Cir. 1994).

The petition was frivolous because under well-established law, a debtor may not use the automatic stay as a substitute for obtaining a supersedeas bond. In granting the Dismissal Motion, the Court found that "Harris filed the petition in bad faith, in order to avoid the necessity of posting a supersedeas bond during the appeal of the judgment." Dismissal Ruling at 9.

The petition was also filed for an improper purpose—solely to delay, hinder, and harass Holmes. Harris had no ongoing business to reorganize, no meaningful unsecured creditors other than Holmes, and no means of proposing a legitimate reorganization plan. Prior to the Petition Date, Harris orchestrated a series of pre-petition transfers that depleted the value of the estate, including the following:

1) Refinancing her home and reducing the available equity by at least $125,000;
2) Withdrawing $45,000 from a retirement account;
3) Spending $20,000 to purchase a new vehicle for her daughter;
4) Spending $28,000 to purchase a brand-new truck for her husband; and
5) Transferring $35,000 to her sister and mother.

These pre-petition transfers further establish that the filing of the petition was not motivated by a legitimate reorganizational purpose.

A meaningful sanction against Harris' counsel is appropriate because he has previously been sanctioned for engaging in improper conduct in an adversary proceeding before Judge Zurzolo, *Trainor v. Evans (In re Evans)*, Case No. 2:14-ap-01619-VZ, and according to the California State Bar's website, two disciplinary proceedings arising out of his conduct in bankruptcy cases are pending against him. Counsel's prior conduct shows that he will not be deterred from advising clients to file frivolous petitions unless sanctions are imposed against him.

In addition to sanctions under Bankruptcy Rule 9011, the Court should also impose sanctions pursuant to its inherent power under § 105. The filing of a chapter 11 case for the sole purpose of delaying litigation in another forum is appropriately sanctionable under 11 U.S.C. § 105(a), as "[t]he only way to deter filing and prosecuting bankruptcy cases in bad faith is to impose monetary sanctions against both the debtor and the debtor's counsel . . . ." *In re Silberkraus*, 253 B.R. 890, 913 (Bankr. C.D. Cal. 2000) (sanctioning debtor and counsel for filing and prosecuting a chapter 11 case for 7 months to hinder and delay state court litigation).

*2. Summary of Harris' Opposition to the Sanctions Motion*

Harris makes the following arguments and representations in opposition to the Sanctions Motion:

Harris provided good-faith evidence and legal arguments in opposition to the Dismissal Motion. Although the Court ultimately sided with Holmes, the contrary evidence presented by Harris was sufficient to defeat the contention that the petition was frivolous or was filed for an improper purpose.

First, Harris presented evidence showing that the petition was not filed solely to avoid posting a supersedeas bond. Harris testified that she filed the petition because her assets were insufficient to pay even half of the Judgment.

Second, Harris made a good faith argument that the petition was filed for a legitimate reorganizational purpose. Harris argued that a plan funded by her exempt assets could be confirmed under the new value corollary to the absolute priority rule. Although the Court was

not convinced by Harris' argument, sanctions are not warranted because the argument was not frivolous.

Holmes argues that Harris' alleged pre-petition dissipation of assets establishes that the petition was filed for an improper purpose. That argument is not persuasive. The Court did not rely upon Harris' alleged pre-petition conduct in granting the Dismissal Motion. Further, the evidence argues against a finding of bad faith. The pre-petition transactions that Holmes argues are evidence of "secreted assets" were, in fact, virtually all drawn from the petition, schedules, and testimony at the § 341 meeting. These were not secret, non-disclosed transactions.

Harris' assertion that counsel should be sanctioned because California State Bar disciplinary proceedings are pending against him is irresponsible mud-slinging. Harris makes no attempt to show how the pending disciplinary proceedings are relevant to this action. Further, no decision has been made in the disciplinary proceedings and counsel remains a member of the California Bar in good standing.

*3. Summary of Harris' Reply in Support of the Sanctions Motion*

Harris makes the following arguments and representations in her reply in support of the Sanctions Motion:

Holmes' opposition is little more than an attempt to re-litigate the Court's earlier determination that Harris filed the petition in bad faith. That finding is now final and non-appealable, and supports the imposition of sanctions.

In support of her contention that she filed the petition for a legitimate reorganizational purpose, Harris points only to argument made by her counsel at the hearing. She does not identify any evidence supporting her ability to confirm a plan.

Harris argues that because the Court did not consider her bad-faith pre-petition conduct in granting the Dismissal Motion, such conduct is irrelevant to the issue of whether sanctions should be imposed. The fact that the Court did not consider that evidence in the context of the Dismissal Motion does not mean that the evidence is not relevant and admissible now.

It was entirely appropriate for Holmes to bring to the Court's attention prior disciplinary actions taken against Harris' counsel. While the Court should only consider counsel's conduct in this case when deciding whether sanctions should be imposed, it may consider counsel's prior conduct when deciding what sanction would be appropriate. *In re Brooks-Hamilton*, 329 B.R. 270, 283–85 (B.A.P. 9th Cir. 2005), *aff'd in relevant part*, 271 F.App'x 654, 661 (9th Cir. 2008).

## II. Findings of Fact and Conclusions of Law

Bankruptcy Rule 9011(b) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
> 1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> 2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Bankruptcy Rule 9011(c) provides that the Court may "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." A motion for sanctions may not be presented to the court unless, within 21 days after service of the motion, the challenged paper is not withdrawn or appropriately corrected. Bankruptcy Rule 9011(c)(1)(A). The 21-day safe harbor does not apply "if the conduct alleged is the filing of a petition in violation of subdivision (b)." *Id.*[4]

In assessing the propriety of sanctions, "frivolousness and improper purpose are not wholly independent considerations but 'will often overlap.'" *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 830 (9th Cir. 1994). The Court "must consider both frivolousness *and* improper purpose on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other." *Id.*

In interpreting Bankruptcy Rule 9011, it is appropriate for the Court to look to cases interpreting Civil Rule 11, which is virtually identical. *In re Start the Engines, Inc.*, 219 B.R. at 270. "The standard for determining the propriety of Rule 11 sanctions is one of objective reasonableness for determinations of frivolousness as well as of improper purpose. 'If, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time the position is adopted, then sanctions should not be imposed.'" *Conn v. Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992) (internal citations omitted).

In *Marsch*, the debtor filed a Chapter 11 petition before the state court could enter a restitution judgment against her and in favor of her ex-husband. *Id.* at 825. The bankruptcy court found that the debtor filed the petition to prevent entry of the judgment and to avoid posting a supersedeas bond, even though the debtor had sufficient assets to pay the judgment or post the bond. *Id.* The Ninth Circuit upheld both the bankruptcy court's dismissal of the petition as a bad-faith filing and the imposition of $27,452 in Rule 9011 sanctions. *Id.* at 830–31. In upholding the sanctions award, the *Marsch* court stated that although the petition could not "be characterized as wholly frivolous" it was "certainly of dubious legal merit." *Id.* at 830. In sustaining the finding that the petition was filed for an improper purpose, the court emphasized "that the petition was filed solely to delay collection of the judgment and avoid posting an appeal bond, even though debtor had the ability to satisfy the judgment with nonbusiness assets." *Id.* According to the court, the debtor's action "was a transparent attempt to use a Chapter 11 petition and the resulting stay as an inexpensive substitute for the bond required under state law." *Id.*

As was the case in *Marsch*, here the considerations of frivolousness and improper purpose overlap. With respect to improper purpose, the Court found that Harris filed the petition in bad faith, to avoid posting a supersedeas bond. The finding that the petition was filed in bad faith was based in part upon the finding that Harris lacked the ability to propose a confirmable plan. For

---

[4] Although the 21-day safe harbor does not apply in this case, Holmes' counsel sent Harris' counsel a letter on April 28, 2020, advising that the Sanctions Motion would be filed unless Harris withdrew the petition within 21 days.

purposes of Bankruptcy Rule 9011, the finding that Harris lacked the ability to propose a confirmable plan goes to the issue of whether the petition was frivolous.

The fact that the Court found that the petition was filed in bad faith and that Harris lacked the ability to confirm a plan does not compel a finding that for Bankruptcy Rule 9011 purposes, the petition was filed for an improper purpose and was frivolous. In granting the Dismissal Motion, the Court stated that it could not "conclusively rule out the possibility" that the plan contemplated by Harris could be confirmed. Dismissal Ruling at 10. The Court dismissed the case because Harris had not presented sufficient evidence that she was "willing to make the substantial sacrifice of committing approximately $500,000 in non-exempt assets that would be required were Harris to have a realistic possibility of confirming a plan." *Id.* at 10.

Notwithstanding these findings, as of the filing of the petition, there was an objectively reasonable basis for Harris and her counsel to take the position that they had the ability to confirm a plan. Successfully confirming a plan requires a debtor to overcome numerous hurdles, and the obstacles to plan confirmation often cannot be easily predicted at the commencement of the case. Sanctioning a debtor and her counsel for filing a petition in a case where the Court later determines that a debtor lacks the ability to propose a confirmable plan would create a chilling effect discouraging parties from seeking bankruptcy protection.

"The key question in assessing frivolousness is whether a complaint states an arguable claim …." *Conn v. Borjorquez*, 967 F.2d at 1421 (9th Cir. 1992). Applying this principle to the bankruptcy context, the question becomes whether there was an arguable basis for the debtor to take the position that she had the ability to confirm a plan as of the petition date. As noted, in granting the Dismissal Motion, the Court declined to conclusively rule out the possibility that Harris could confirm a plan. Thus, there was an arguable basis for Harris and her counsel to take the position that a confirmable plan was a possibility. The filing of the petition was not frivolous.

*Marsch* is not to the contrary. In *Marsch*, the debtor's conduct was particularly offensive because she sought bankruptcy protection even though she had the ability to obtain a supersedeas bond or pay the judgment. The court reprimanded the debtor for using Chapter 11 "as an inexpensive substitute" for the supersedeas bond that she could afford. *Marsch*, 36 F.3d at 830. Here, by contrast, Harris did not have assets sufficient to pay the Judgment or obtain a supersedeas bond.[5] Harris' inability to afford a supersedeas bond renders her conduct significantly less egregious than that of the debtor in *Marsch*.

Having found that sanctions are not warranted under Bankruptcy Rule 9011, the Court likewise declines to impose sanctions under its inherent authority. Sanctions under the Court's inherent authority may be imposed "against a party who willfully disobeys a court order or acts in bad faith, 'which includes a broad range of willful improper conduct.'" *Miller v. Cardinale (In re DeVille)*, 280 B.R. 483, 495-96 (B.A.P. 9th Cir. 2002), *aff'd sub nom. In re DeVille*, 361 F.3d 539 (9th Cir. 2004). "To impose inherent power sanctions, a court must find that a party acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* A finding of bad faith is warranted where a litigant "knowingly or recklessly raises a frivolous argument." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648-49 (9th Cir. 1997).

---

[5] Holmes argues that Harris' failure even to attempt to obtain a supersedeas bond prior to filing the petition shows bad faith that is sanctionable. The Court disagrees. Where the record indicates that Harris' assets were woefully inadequate to obtain a bond against a judgment in excess of $2.9 million, Harris' failure to make an attempt to secure a bond—which would have proved futile—does not support the imposition of sanctions.

Having found that there was an objectively reasonable basis for Harris and her counsel to assert that they could confirm a plan, the Court cannot find the willful improper conduct necessary to impose sanctions under its inherent authority.

### III. Conclusion

Based upon the foregoing, the Sanctions Motion is **DENIED**. The Court will enter an order consistent with this Memorandum of Decision.

###

Date: July 23, 2020

Ernest M. Robles
United States Bankruptcy Judge